**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **(1) TransCapital Leasing Associates 1994-I L.P.**, a Delaware limited partnership**, (2) Plains Capital Corporation,** a Texas corporation and its subsidiaries including **(3) PlainsCapital Bank,** a Texas banking association, f/k/a Plains National Bank, and **(4) Plains Financial Corporation,** a Texas corporation, A PARTNER OTHER THAN THE TAX MATTERS PARTNER | § § § § § § § § § § § § | **CASE NO. 06-24-T** |
| **Plaintiffs,** | § | **Judge Marian Blank Horn** |
| **v.** | § § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Paragraph 4 of Appendix A to the Rules of the United States Court of Federal Claims ("RCFC") and to the Honorable Judge Marian Blank Horn's Order entered on June 27, 2006 ("Order"), the Parties hereby file this Joint Preliminary Status Report.

**(a) Jurisdiction.**

At this time, the parties believe that the Court has jurisdiction over this case under 26 U.S.C. § 6226.

**(b) Case Consolidation.**

The Parties do not anticipate that this case will be consolidated with any other case.

**(c) Bifurcation of Liability and Damages.**

This case does not involve damages. Separate trials on the questions of liability and of damages should not be necessary.

**(d) Deferral of Proceedings.**

The Parties are not currently aware of a reason to defer proceedings in this case pending consideration of another civil case before this Court or any other tribunal.

**(e) Removal or Suspension.**

Not applicable.

**(f) Joinder of Additional Parties.**

At this time, neither Party anticipates that any additional party will be joined.

**(g) RCFC 12(b), 12(c) or 56 Motion.**

In accordance with the Order, the Parties will not file any motions to dismiss or motions for summary judgment without first contacting the Court.

**(h) Factual and Legal Issues.**

**1) <u>Plaintiffs' Position</u>**

Plaintiffs bring this case under Section 6226 of the Code for redetermination of partnership items. This case arose out of an IRS income-tax examination of positions that Plaintiffs took on their federal income tax returns with respect to the Partnership's investment in the leasing activities of certain computer equipment (the "Transactions"). Specifically, Plaintiffs reported (i) deductions equal to the rental payments the Partnership paid to the Mithril Corporation under the terms of a certain lease and (ii) income equal to the amount of interest it received from Mithril Corporation under the terms of certain promissory notes.

The FPAAs

Once the IRS concluded its examination, the Commissioner of Internal Revenue (the "Commissioner") issued to the tax matters partner of TransCapital Leasing Associates 1994-I, L.P. (the "Partnership") Notices of Final Partnership Administrative Adjustment for each of the Partnership's taxable years ended December 31, 1994,[1] December 31, 1995, December 31, 1996, December 31, 1997, December 31, 1998, December 31, 1999 and December 31, 2000 (the "FPAAs"). The Commissioner issued the FPAAs for taxable years 1994-1999 on August 15, 2005 and the FPAA for taxable year 2000 on August 29, 2005.

The FPAAs reflected the Commissioner's position that all of the tax benefits arising from the Transactions should be disallowed. Specifically, the Commissioner determined that the Partnership losses "relate to transactions that lack economic substance, were prearranged and predetermined and were without legitimate business purpose." The adjustments are:

| Partnership Taxable Year Ended | Net Rental Income | Interest Income | Net Proposed Adjustments |
|---|---|---|---|
| December 31, 1994 | +$ 625,291 | -$ 254,287 | +$ 371,004 |
| December 31, 1995 | +$2,492,381 | -$1,012,866 | +$1,479,515 |
| December 31, 1996 | +$2,492,381 | -$ 878,852 | +$1,613,529 |
| December 31, 1997 | +$2,492,381 | -$ 730,804 | +$1,761,577 |
| December 31, 1998 | +$2,492,381 | -$ 567,254 | +$1,925,127 |
| December 31, 1999 | +$2,492,381 | -$ 386,578 | +$2,105,803 |
| December 31, 2000 | +$2,087,627 | -$ 160,799 | +$1,926,828 |

The tax matters partner of the Partnership did not file a petition for readjustment of the partnership items within 90 days of the issuance of the FPAAs. After the expiration of 90 days and before the expiration of 150 days from the issuance of the FPAAs, Plaintiffs filed the

[1] This was a short taxable year. It began September 30, 1994 and ended December 31, 1994.

Petition for Readjustment of Partnership Items challenging the FPAAs' determinations pursuant to Section 6226 of the Code.

Plaintiffs believe that the adjustments are improper, that the Court should reverse the adjustments in the FPAAs and that the Commissioner should be ordered to refund Plaintiffs' jurisdictional deposit, including any payment of interest and penalties.

The Transactions.

The facts underlying the economic interests and tax benefits at issue in this case are really quite simple. Fundamentally, this is a valuation case. Plaintiffs purchased slices of the anticipated future residual value of certain computer equipment. Based on data and trends known at the time, Plaintiffs were counting on the forecasted residual values of the certain computer equipment to be realized. Based on those residual value forecasts, Plaintiffs had a reasonable possibility of earning a pre-tax profit from the investment in the computer equipment.

Briefly, the Partnership purchased interests in two kinds of computer equipment -- manufactured by Bull HN Information Systems (the "Bull Equipment") and manufactured by Unisys (the "Unisys Equipment", sometimes referred together with the Bull Equipment as the "Equipment"). The Partnership paid cash, assumed debt related to the Equipment (the "Underlying Debt"), and was assigned the rights as lessor under leases to which the Equipment was subject (the "Underlying Leases").

The Partnership then sold its ownership interests, but retained its residual interests, in the Equipment to Mithril Corporation ("Mithril") and, for a stated rent, simultaneously leased back from Mithril the Equipment for a period of time extending past the term of any other leases to which the Equipment was subject (the "Mithril Lease"). Mithril paid cash and delivered two promissory notes

to the Partnership (the "Mithril Notes"). As a result of the sale/leaseback, the Partnership was required to report (i) interest income resulting from its sale of the Equipment under the Mithril Notes and (ii) deductions for the rent payments it owed Mithril under the terms of the Mithril Lease.

Through these agreements, the Partnership retained its rights to the rent payments from the Underlying Leases and any future leases. The Partnership, however, then sold to Aardan ("Aardan") its rights to receive the rent payments from the Underlying Leases. Aardan paid to the Partnership cash and assumed the Partnership's obligations with respect to the Underlying Debt. The Partnership was, therefore, required to report income equal to cash and the amount of the Underlying Debt and was entitled to an increase in its basis equal to the reported income. Code §1001; Code § 705; see also *Crane v. Comm'r*, 331 U.S. 1 (1947).

After these agreements had been entered into, a 99% limited partnership interest in the Partnership was contributed to Plains Financial Corporation in return for stock. Code § 351. In light of this contribution, the Partnership terminated, its assets were deemed liquidated to the new partners, the Partnership was reconstituted and the new partners were deemed to contribute those assets to the reconstituted Partnership. Code § 708. Plains Financial Corporation, therefore, received a basis in its newly-acquired 99% limited partnership interest equal to (i) any capital contribution and (ii) the basis of the 99% limited partnership interest in the hands of the previous partner. Code §§ 722 and 742. As noted above, the basis in the Partnership before the contribution included the reported income from the sale to Aardan of the rent payments from the Underlying Leases.

In any event, after the contribution, Plains Capital Corporation, a Texas corporation, on behalf of its subsidiaries, PlainsCapital Bank, a Texas banking association, f/k/a Plains National Bank, and Plains Financial Corporation, a Texas corporation (collectively, "Plains Bank") was effectively an investor in the future residual values of the Equipment. The Partnership and, later, Plains Bank relied on an appraisal of the Equipment that was prepared by a nationally respected appraisal firm, Marshall and Stevens Incorporated ("M&S"). The M&S Appraisal determined future residual values indicating substantial re-lease rentals.[2] Thus, the Partnership and Plains Bank anticipated a significant cash-on-cash return resulting from the re-lease rentals which would inure from the Equipment. In fact, all of the parties stood to profit from the anticipated re-lease rentals. Unfortunately, no re-lease rentals were actually realized.

<u>Tax Treatment of the Transactions</u>

Plaintiffs timely-filed their federal income tax returns for taxable years 1994-2000 and properly reported the tax consequences of the Transactions as noted above in accordance with a tax opinion issued by Jon T. Flask Esq. of Haight, Tramonte, Siciliano & Flask, P.C. on September 30, 1994. Specifically, the Partnership reported, and Plains Bank included in its taxable income its distributive share of, Mithril's payments of the interest due under the terms of the Mithril Notes. The Partnership also reported, and Plains Bank properly claimed entitlement to its distributive share of, deductions equal to the amount of the Partnership's payments to Mithril of rent due under the terms of the Mithril Lease. In addition, the deductions for rental income were ultimately allowable to the partners of the Partnership because its basis reflected the

[2] The calculation of re-lease rentals is a function of the residual value of the underlying equipment.

amount of taxable income recognized upon the sale to Aardan of the rent payments from the Underlying Leases.

In disallowing the Partnership's losses, the Government hangs its hat upon positions that (i) are abandoned by the IRS, (ii) are not within the jurisdiction of this Court, and (iii) are misapplied judicial doctrines. For instance, the Government's Answer sets forth a position that the Partnership's allocations of income and deductions do not properly reflect the actual income and expenses and, therefore, should be reallocated under Section 482 of the Code. It should be noted, however, that the IRS abandoned this position with respect to transactions similar to the transactions at issue in Revenue Ruling 2003-96, 2003-2 CB 386 (July 22, 2003).

The Government further sets forth that (i) the contribution by TCLA 92-IX of its partnership interest in the Partnership to Plains Financial Corporation should be recharacterized as a sale and (ii) Plains Bank's deductions and credits should be disallowed under Section 269 of the Code because Plains Capital Corporation acquired control over Plains Financial Corporation for the principal purpose of evasion or avoidance of federal income tax. However, these positions do not involve partnership items and are, therefore, not within the jurisdiction of this Court.

The crux of the Government's argument rests with judicially-created doctrines. In particular, the Government argues that the Transactions lack economic substance and have no business purpose. The Supreme Court, however, has held that "[w]here . . . there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features . . . the Government should honor the allocation of rights and

duties effectuated by the parties." See *Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84 (1978). Furthermore, the Court of Appeals for the Federal Circuit stated recently that, to satisfy the *Frank Lyon* test, taxpayer's business-profit motivations must be objectively reasonable. See *Coltec Industries, Inc. v. United States*, -- F.3d --, 2006 WL 1897077 (Fed. Cir. July 12, 2006).

With respect to the Transactions, it was objectively reasonable that Plains Bank's primary business purpose was to make a pre-tax profit from its investment. Plains Bank relied upon independent projections, based in part on the M&S Appraisal, that they would receive a pre-tax profit from an investment in the Partnership. Specifically, the M&S Appraisal reflected that there was a realistic possibility of a pre-tax profit on the residual values of the Bull Equipment and the Unisys Equipment. As a result under *Coltec*, the Transactions cannot be disregarded in the face of the economic substance doctrine. Furthermore, the fact that Plains Bank sought favorable tax consequences, as well as a before-tax profit, does not make the Transactions shams. See *Compaq Computer Corp. v. Comm'r*, 277 F.3d 778, 781 (5th Cir. 2001) (holding held that a transaction would not be invalidated merely because a taxpayer sought otherwise unavailable tax benefits).

<u>IRS Adjustments Are Improper and Should Be Reversed.</u>

As a result of the foregoing, the IRS improperly disallowed all of the tax benefits associated with the Transactions. The Partnership was not a sham. The Partnership had an objectively reasonable business purpose and profit motive. The Partnership's leasing activities had economic substance and were not prearranged or predetermined. The Court should reverse the adjustments in the FPAAs and refund Plaintiffs' jurisdictional deposit, including any payment of interest and penalties.

Plaintiff's Statement on Damages

Plains Bank seeks a return of the jurisdictional deposit it remitted to the Commissioner pursuant to Section 6226(e) of the Internal Revenue Code of 1986, as amended (the "Code"). On January 5, 2006, Plains Bank made to the Commissioner a deposit of seven cashier's checks totaling $3,973,931 – the amount by which Plains Bank believed in good faith that its federal tax liability would increase if this Court upheld the proposed adjustments reflected in the FPAAs. The IRS subsequently determined that this jurisdictional deposit was deficient by $6,411. On June 5, 2006, Plains Bank deposited with the Commissioner the balance of that deficiency.

Therefore, while damages do not need to be computed, the amount of any refund may need to be computed. To avoid unnecessary time at trial, however, the Plaintiffs respectfully request that the Court determine only questions of liability. If appropriate after this determination, the Plaintiffs request that the Court permit them a reasonable amount of time within which to perform and to agree among themselves any necessary computations. The Plaintiffs would then submit a stipulation to the Court.

**2) Defendant's Position**

Defendant views this case as an abusive tax shelter, one of many which involved the same pattern of transactions. This shelter is known as a "lease strip" and is described in Notice 2003-55, which modifies and supersedes Notice 95-53.

Defendant will need to conduct discovery into Plaintiffs' allegations. Plaintiffs allege a series of complex transactions, including multiple sales and leasebacks of computer equipment, and culminating in a purported I. R. C. § 351 transfer by TransCapital Leasing Associates 1992-IX Limited Partnership (TCLA 1992-IX) of its 99% limited partnership interest in TransCapital

Leasing Associates 1994-I Limited Partnership (TCLA 1994-I) to Plains Financial Corporation in exchange for stock of Plains Financial Corporation. Plaintiffs allege that TCLA obtained an appraisal of the computer equipment that was prepared by Marshall and Stevens Incorporated in connection with its acquisition of the equipment. Plaintiffs allege that Plains Bank and Plains Financial Corporation relied on a tax opinion issued by the law firm of Haight, Tramonte, Siciliano & Flask, P.C., located in Vienna, Virginia, in deciding to acquire the 99% limited partnership interest in TCLA 1994-I from TCLA 1992-IX. Plaintiffs acknowledge that they received no re-lease rentals.

These transactions, all purportedly took place within a 15-day period in September 1994, were entered into solely for the purpose of tax avoidance, have no economic substance or business purpose, and were prearranged and predetermined. The transactions were designed to allow a tax neutral party, the Iowa Tribe of Oklahoma, to realize income from the assignment of rights to receive future payments under a lease while allowing a taxable party, Plains Financial Corporation, to realize the tax deductions associated with the leased assets.

The FPAAs issued by the IRS are correct. The IRS determined in the FPAAs for years 1994-2000 that TCLA 1994-I's losses "relate to transactions that lack economic substance, were prearranged and predetermined and were without legitimate business purpose." These determinations are presumptively correct and the burden of proof to reverse any of these determinations rests with plaintiffs. The government may raise any additional legal arguments to support the IRS determinations. Additional legal arguments were included in the answer of the United States, which are incorporated by reference.

The major issues include the following:

Whether the IRS properly disallowed the income and losses TCLA 1994-I reported from the

series of prearranged transactions because the transactions lacked economic substance and had no business purpose.

Whether TCLA 1994-I's sale to Aardan Leasing Corporation of the right to receive rental income from Blue Cross Blue Shield of North Dakota (BCBS) and Carolina Freight Carriers Corporation (CFCC) was a financing arrangement and not a sale.

Whether the IRS may properly allocate the deductions associated with BCBS and CFCC equipment and claimed by Plains Financial Corporation to TCLA 1992-IX under I. R. C. § 482 in order to clearly reflect income or to prevent the evasion of taxes.

Whether the Service may properly recharacterize the contribution of an interest in TCLA 1994-I to Plains Financial Corporation as a taxable sale.

Whether Plains Capital Corporation acquired, directly or indirectly, control of Plains Financial Corporation with the principal purpose of evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance that Plains Capital Corporation would not otherwise enjoy so that the IRS may apply I. R. C. § 269 to disallow such deduction, credit, or other allowance.

Whether under the "substance over form" doctrine, the deductions at issue are not allowable for federal income tax purposes.

Whether TCLA 1994-I is a valid partnership under subchapter K of Title 26 and therefore, whether the allocations of income, expense, etc. it reported on the tax returns at issue should not be respected for tax purposes.

This case involves many parties and a complex leasing transaction that was intended to be difficult to follow. The same transactional structure was rejected by the Tax Court last year in *CMA Consolidated, Inc. v. Commissioner*, T.C. Memo. 2005-16. *CMA Consolidated* actually involved the same tax neutral entity, the Iowa Tribe of Oklahoma, that is involved in this case.

The identical structure of the transaction in this case, involving the same promoter and accommodating parties, was more recently tested and rejected in *TransCapital Leasing Associates 1990-II L.P. v. United States*, 2006 WL 897723 (W. D. Texas March 31, 2006)[1]. In *TransCapital Leasing Associates 1990-II,* the Court found that "[t]he reality is that the rental expense deductions claimed by [the 99% limited partner] were not economically inherent in the transactions but rather were created artificially by machinations whose only purpose and effect was to give rise to the desired tax consequences. In *TransCapital Leasing Associates 1990-II*, the Court also found that there was no legitimate purpose other than tax avoidance for entering into the leasing transaction, that there was no reasonable expectation of profit, and that the transaction was solely shaped by tax avoidance objectives, completely lacking in profit potential.

Earlier this month, the Federal Circuit in *Coltec Industries, Inc. v. United States,* __ F.3d __, 2006 WL 1897077 (Fed. Cir. July 12, 2006), in a contingent liability shelter, discussed the economic substance doctrine at length, which of course, is at issue in this case. The Federal Circuit in *Coltec* concluded that it was error to reject the long-standing economic substance doctrine and its application of that doctrine. The Court held that 1) a lack of economic substance is sufficient to disqualify a transaction without proof that the taxpayer's sole motivation is tax avoidance, 2) the taxpayer bears the burden of proving that a transaction has economic substance, 3) the economic

[1]*TransCapital Leasing Associates 1990-II* is on appeal to the Fifth Circuit.

substance of a transaction must be viewed objectively rather than subjectively, and 4) the transaction to be analyzed is the one that gave rise to the alleged tax benefit.

In view of *CMA Consolidated*, *TransCapital Leasing Associates 1990-II, and Coltec,* the Court should sustain the adjustments set forth in the FPAAs in all respects, reject the transactions here for lack of economic substance, disallow the deductions, and deny the relief requested in the petition.

**(i) Settlement/ADR.**

The Parties are open to settlement offers. However, until discovery has been completed, at least in part, the parties cannot determine whether this case can be settled.

**(j) Discovery**

**1. Joint Proposed Scheduling Plan.**

i. The Order requires the Parties to complete Discovery by **June 25, 2007**.

ii. Plaintiffs propose the below Scheduling Plan:

| **Deadline** | **Proposed Date** |
|---|---|
| Plaintiffs to Designate Expert Witnesses | December 1, 2006 |
| Defendant to Designate Expert Witnesses | December 14, 2006 |
| Expert Witness Testimony Report | March 2, 2007 |
| Completion of Factual Discovery | March 2, 2007 |
| Rebuttal Expert Witness Report | March 16, 2007 |
| Completion of Expert Witness Discovery | May 15, 2007 |
| Daubert Motions | June 1, 2007 |
| Response to Daubert Motions | June 15, 2007 |

iii. Defendant proposes the following Scheduling Plan:

| **Deadline** | **Proposed Date** |
|---|---|
| Plaintiffs to Designate Expert Witnesses | April 1, 2007 |
| Defendant to Designate Expert Witnesses | April 15, 2007 |
| Expert Witness Testimony Report | June 2, 2007 |
| Completion of Factual Discovery | June 25, 2007 |
| Rebuttal Expert Witness Report | June 17, 2007 |
| Completion of Expert Witness Discovery | June 25, 2007 |
| Daubert Motions | August 10, 2007 |
| Response to Daubert Motions | August 31, 2007 |

**2. Rule 26 disclosures**: In accordance with Rule 26 of the RCFC, the Parties will exchange the information required to be disclosed by Thursday, August 10, 2006 – which is 14 days from the date of filing of this Joint Preliminary Status Report.

**3. Any other matters pertinent to the completion of discovery in this case:**

**Plaintiffs contend:** As the Court acknowledged in the Order, the parties and issues in this case resemble a number of other cases by the same counsel. As a result of this history and that the discovery period is significantly less than that requested by Defendant, Plaintiffs believe it is important to note at this early date that Plaintiffs intend to issue a Notice of Deposition to the United States of America under Rule 30(b)(6) of the RCFC. Plaintiffs also intend to request and to seek any and all discoverable information from Defendant's expert witnesses, including, but not limited to, any proprietary formulas utilized in preparing Defendant's expert reports. Plaintiffs would also like to note that while Defendant may raise points related to *TransCapital Leasing Associates 1990-II, L.P., et al., v. United States*, No. SA-01-CA-0881-XR, 2006 WL 897723 (W.D. Tex. Mar. 31, 2006), it is currently being appealed.

**Defendant contends:** Defendant is likely to move for leave to exceed the ten deposition limit. Defendant reserves the right to oppose all discovery by Plaintiff that it deems improper, unnecessary or otherwise objectionable.

4. **The earliest date by which this case should reasonably be expected to be ready for trial:**

**Plaintiffs contend:** Plaintiffs estimate September 24, 2007

**Defendant contends:** Defendant estimates January 30, 2008. One member of Defendant's trial team has another major tax shelter case set for trial in October 2007, with many deadlines in the preceding month. The trial in that case is expected to last for two weeks.

**5. An estimate of the length of time expected to try this case to judgment:** Plaintiffs estimate this case can be tried in 5 trial days. Defendant estimates this case can be tried in 10 trial days.

**6. The requested place of any trial:** Dallas, Texas

**7. Any other matters counsel deem appropriate for inclusion in the joint scheduling plan:** At this time, the Parties do not believe there are any other matters appropriate for inclusion in the joint scheduling plan.

**(k) Electronic Case Management.**

This case has been designated for the ECF program.

**(l) Other Information.**

The Parties do not believe there is additional information of which the Court should be aware at this time. Undersigned counsel jointly represent that they held the early meeting of counsel as required in Paragraph 3 of Appendix A on July 5, 2006.

**(m) Status Conference.**

The Court will schedule a status conference after receipt of this Joint Preliminary Status Report.

Respectfully submitted,

**FOR PLAINTIFFS**

/s/ M. Todd Welty
M. TODD WELTY
MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, LLP
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
twelty@meadowsowens.com

TARA C. CAMPBELL
tcampbell@meadowsowens.com

ATTORNEYS FOR PLAINTIFFS

**FOR DEFENDANT**

/s/ Waymon G. DuBose, Jr.
WAYMON G. DUBOSE, JR.
Attorney of record
Tax Division
U. S. Department of Justice
Maxus Energy Tower
717 N. Harwood, Suite 400
Dallas, Texas 75201
214 880-9721 Telephone
214 880-9741 Facsimile
waymon.g.dubose@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JON E. FISHER
DAVID B. COFFIN
DAVID R. HOUSE
Of Counsel

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA